# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) Case No. 2:11-cr-00388-MMD-CWH-3 |
| vs. | ) **REPORT AND RECOMMENDATION** |
| HARE, et. al., | ) |
| Defendants. | ) |

This matter is before the Court on Defendant Paul Seifert's Motion to Dismiss for Outrageous Government Conduct (#56), filed July 2, 2012; Government's Response (#59), filed July 18, 2012; and Defendant's Reply (#60), filed July 24, 2012.

## BACKGROUND

In February 2008, the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") commenced Operation Thunderhead in cooperation with the Las Vegas Metropolitan Police Department ("LVMPD"). A confidential informant ("CI") purported to members of the Las Vegas chapter of the Hells Angels Motorcycle gang that he was involved in large scale narcotics trafficking. Seifert was one of the members who contacted the CI to express his interest in side jobs that are tax-free, such as providing security. On April 20, 2008 Seifer sent a text message to the CI and a follow-up telephone call resulted in Seifert accompanying the CI to a small drug transaction on April 22, 2008. Seifert showed the CI that he was armed with a 9mm handgun, handled the purported narcotics, and was paid $300 for providing security for the transaction. On May 2, 2008, Seifert met with the CI again to discuss providing security for a larger drug transaction. On May 8, 2008, Seifert accompanied the CI to a hotel room where an undercover narcotics transaction for ten kilograms of cocaine was conducted.

On November 1, 2011, Defendant Paul Seifert ("Seifert") was indicted for Conspiracy to

1  Possess with Intent to Distribute a Controlled Substance pursuant to Title 21, United States Code,
2  Section 846.¹

## DISCUSSION

Seifert seeks to dismiss the indictment based on "outrageous government conduct" pursuant to the Due Process Clause of the Fifth Amendment to the United States Constitution. *See United States v. Russell*, 411 U.S. 423 (1973). Such assertion requires the Court to determine if Seifert's constitutional rights will be violated if prosecution is allowed to proceed. Consequentially, it is a question of law to be decided by the Court, not an issue for the jury. *See United States v. Sotelo-Murillo*, 887 F.2d 176, 182 (9th Cir. 1989) (*citing United States v. Montilla*, 870 F.2d 549, 551 n.1 (9th Cir. 1989) and *United States v. Prairie*, 572 F.2d 1316, 1319 (9th Cir. 1978)).

The notion that government misconduct could warrant dismissal of an indictment originates in the dicta of *United States v. Russell*, 411, U.S. 423, 431-32 (1973). In *Russell*, the Supreme Court noted that there may be a "situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." *Id.* Subsequently, the Supreme Court posited that it has the power to bar conviction of a defendant on due process grounds if government conduct reaches a "demonstrable level of outrageousness." *Hampton v. United States*, 425 U.S. 484, 491-95 (1976).

However, the successful assertion of this notion is extremely rare. *See United States v. Ryan*, 548 F.3d 782, 789 (9th Cir. 1976) (explaining that "the due process channel which *Russell* kept open is a most narrow one").² As a result, to "secure the dismissal of an indictment on due process grounds, 'a defendant must meet an extremely high standard.'" *United States v. Nobari*, 574 F.3d 1065, 1081 (9th Cir. 2009) (*quoting United States v. Smith*, 924 F.2d 889, 897 (9th Cir.

---

¹ Seifert was also indicted for Sale of a Firearm to a Prohibited Person under 18 U.S.C. § 922(d)(1) and 924(a)(2) and Distribution and Possession with Intent to Distribute a Controlled Substance under 21 U.S.C. § 841(a)(1) and (b)(1)(C) on November 1, 2011. Seifert notes that the present motion was filed in this case because it has a lower case number. *See* Motion 3:26, n. 2.

² In fact, the only successful assertion of outrageous government conduct in the Ninth Circuit was in *Greene v. United States*, 454 F.2d 783 (9th Cir. 1971), which predates *Russell* and *Hampton*.

1991)). The Defendant "will not succeed unless the governmental conduct challenged is so grossly shocking and so outrageous as to violate the universal sense of justice." *Smith*, 924 F.2d at 897. In addition, "the government's involvement must be *malum in se* or amount to the engineering and direction of the criminal enterprise from start to finish." *Id.*

Seifert alleges that this case falls into the narrow category of cases that warrants dismissal for outrageous government conduct. For example, Seifert alleges that his actions are comparable to the defendant in *United States v. Twigg*, 588 F.2d 373 (3d Cir. 1978)[3], which is a Third Circuit case in which a government agent suggested the creation of a drug laboratory, facilitated access to materials, and secured a production location. Seifert claims that the Government targeted him because of his membership in Hells Angels despite knowing that he was not involved in the sale of controlled substances. He also cites to the video of the May 8, 2008 meeting, which shows that he sat in the hotel room, but did not touch, discuss, or transport the alleged ten kilograms of cocaine. However, Seifert's willingly contacted the CI to request "tax-free" jobs, was involved in handling purported narcotics on April 22, 2008, received payment of $300 for providing security, and knowingly met with the CI on May 2, 2008 to discuss his role as armed security on the subsequent narcotics deal conducted on May 8, 2008. These actions are not similar to the defendant in *Twigg* who contributed nothing in terms of expertise, money, supplies, ideas, would not have shared in proceeds from the sale, and the agent was the sole purchaser. *Id.*

In addition, Seifert cites to *Greene v. United States*, 454 F.2d 783 (9th Cir. 1971), in which the Ninth Circuit held that the Government may not involve "itself so directly and continuously over such a long period of time [two and a half years] in the creation and maintenance of criminal

---

[3] The Court notes that *Twigg* has received significant negative treatment to the point of not being followed by subsequent cases. *See U.S. v. Cromitie*, 781 F.Supp.2d 211, 225 (S.D.N.Y. 2011) (noting that conduct equally reprehensible as that in *Twigg* "has been repeatedly found not to violate a defendant's Fourteenth Amendment rights in other courts. The trajectory of the law is away from *Twigg*, not toward it.").

operations, and yet prosecute its collaborators." *Id.* at 787.[4]  However, Seifert's actions in this case were concentrated over several weeks in April and May 2008 rather than two years.  Also, Seifert has not alleged sufficient facts to find that he was substantially coerced to participate in the April 22, 2008 narcotics transaction or the May 8, 2008 narcotics transaction.  Notably, he voluntarily brought a gun to provide protection for the April 22, 2008 transaction.  Seifert also contacted the CI asking for work of this type and agreed to provide security for the May 8, 2008 meeting with knowledge that it was a narcotics sale.

Finally, Seifert points to a December 2007 Officer Report in which Seifert refused to sell a CI narcotics until, upon the fifth request, Seifert sold 2.3 grams of Methamphetamine. *See* Reply 3:8-9.  He argues that this evidence demonstrates that he was not predisposed to commit the offense and was unable to secure the requested 3.5 grams. *Id.* at 3:13.  However, this incident demonstrates that Seifert was involved in a similar crime prior to the CI's commencement of Operation Thunderhead in February 2008. *See United States v. Bogart*, 783 F.2d 1428, 1437 (9th Cir. 1986) (noting that numerous cases refuse to find outrageous conduct when defendent was involved in a continuing series of similar crimes).  The Ninth Circuit has found that it is not outrageous government conduct when an agent approaches a person already engaged in or contemplating criminal activity. *See United States v. O'Connor*, 737 F.2d 814, 817-18 (9th Cir. 1984), *cert. denied*, 469 U.S. 1218 (1985).  Accordingly, the CI's role in this case was limited to facilitating the introduction of a willing Seifert to a tax-free side job as security for a narcotics transaction.

Most significantly, there is a plethora of Ninth Circuit case law that documents the refusal to apply the outrageous government conduct theory to similar and even more questionable situations.  For example, in *United States v. Emmert*, 829 F.2d 805 (9th Cir. 1987), the court found agents' offering of a $200,000 finder's fee in addition to the utilization of threats and intimidation of a defendant who had never bought or sold narcotics previously did not constitution outrageous

---

[4] The Court notes that the Ninth Circuit has mentioned in dicta that *Greene* does not reflect the current law of the circuit on outrageous government conduct and may be characterized as an entrapment case rather than an outrageous government conduct case. *See United States v. Haas*, 141 F.3d 1181, *1 (9th Cir. Mar. 3, 1998).

government conduct because such actions are ordinary tactics used by undercover agents to create credible cover.  In addition, in *United States v. Slaughter*, 891 F.2d 691, 695-6 (9th Cir. 1989), the court found that the use of an attractive female informant to establish a personal relationship with the defendant and persuade him to sell cocaine did not constitute outrageous conduct.  *See also United States v. Simpson*, 813 F.2d 1461 (9th Cir. 1987) (upholding continued use of informant who had sexual relations with defendant).  Comparatively, Seifert actively sought to participate in narcotics transactions as security, voluntarily brought a firearm to perform his role, and knowingly participated in the May 8, 2008 transaction after acknowledging what would happen at a May 2, 2008 briefing with the CI.

Ultimately, Seifert did not present sufficient evidence to prove that the government utilized physical or psychological coercion to engineer and direct the criminal enterprise from start to finish.  *See United States v. Bonanno*, 852 F.2d 434 (9th Cir. 1988).  Therefore, Seifert has not carried his burden of proving that the Government's conduct was so outrageous as to violate the "universal sense of justice."  *Smith*, 924 F.2d at 897.

Based on the foregoing and good cause appearing therefore,

## RECOMMENDATION

**IT IS THE RECOMMENDATION** of the undersigned Magistrate Judge that Defendant Seifert's Motion to Dismiss for Outrageous Government Conduct (#56) be **denied**.

## NOTICE

Pursuant to Local Rule IB 3-2 **any objection to this Report and Recommendation must be in writing and filed with the Clerk of the Court on or before .** The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time.  *Thomas v. Arn*, 474 U.S. 140, 142 (1985).  This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court.  *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

1   DATED this 23rd day of August, 2012.

_____
**C.W. Hoffman, Jr.**
**United States Magistrate Judge**